IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JORGE LUIS CORREA REYES, | § § § | |
| Petitioner, | § § | |
| v. | § § | CAUSE NO. EP-26-CV-53-KC |
| PAM BONDI et al., | § § § | |
| Respondents. | § | |

**ORDER**

On this day, the Court considered Jorge Luis Correa Reyes's Petition for a Writ of Habeas Corpus ("Petition"), ECF No. 1.

I.   **BACKGROUND**

   A.   **Arrival in the United States & Immigration Proceedings**

Correa Reyes is a citizen of Cuba who was paroled into the United States in 1995. Pet. ¶ 11. He was convicted of a crime that year and became subject to a final order of removal in 1998. *Id.* After entry of his final removal order, Correa Reyes "was arrested both by criminal law enforcement and immigration law enforcement several times until he self-deported in 2009." Resp. 1, ECF No. 6. Correa Reyes was released under an Order of Supervision ("OSUP") three separate times because he could not be removed to Cuba. *See* Decl. Maria E. Estrada ("Estrada Decl.") ¶¶ 5, 7, 10, ECF No. 6-1. Correa Reyes "faced several additional felony charges from 2016 through 2018, and his last unlawful entry into the United States was February 2019." Resp. 1. In 2019, Correa Reyes' removal order was reinstated, but he was again released under an OSUP "because his removal was not feasible at that time and on humanitarian grounds due to his medical condition." Estrada Decl. ¶ 13. Petitioner does not allege and Respondents do not

contend that Correa Reyes violated the terms of his 2019 OSUP or that he has been convicted of a crime since his release in 2019. *See generally* Pet.; Resp.; Estrada Decl.

### B.     2025 Re-Detention

On September 29, 2025, Correa Reyes was re-detained. Estrada Decl. ¶ 15. At his deportation officer's request, Correa Reyes filled out travel documents for Cuba. Pet. ¶ 13. According to Correa Reyes, Immigration and Customs Enforcement ("ICE") officers have attempted to persuade him to voluntarily go to Mexico, informing him "that he will be dropped inside the Mexican border line only [sic] his own risk." *Id.* ¶ 15. But, Mexico has not accepted him or issued travel documents for him. *Id.* Nor has the government of Cuba. *Id.* ¶ 16. On December 9, 2025, ICE conducted a custody review and declined to release Correa Reyes as they are "arrang[ing] his removal back to his country." *Id.* ¶ 14.

### C.     Procedural History

On January 14, 2026, Correa Reyes filed this Petition, challenging his continued detention on statutory and constitutional grounds. *Id.* ¶¶ 17–26. He asks the Court to order his immediate release. *Id.* at 8. On January 15, the Court ordered Respondents to show cause why the Petition should not be granted. Show Cause Order 3, ECF No. 4. In answer to the Court's Show Cause Order, Respondents conceded that Cuba will not accept Correa Reyes for repatriation but argued that his "continued post-order detention is permitted by statute and comports with due process" because his "removal is likely in the foreseeable future." Resp. 1–2, 5. In support, Respondents submitted the Declaration of Acting Assistant Field Office Director Maria E. Estrada. Estrada stated that ERO El Paso had made three attempts to remove Correa Reyes to Mexico, all of which were unsuccessful due to his medical condition. Estrada Decl. ¶¶ 20–22. And that ERO El Paso requested to transfer Correa Reyes to ERO Phoenix to remove

him "to Mexico through the Nogales border where his removal is likely to be successful." *Id.* ¶ 23.

Respondents were thus given a month to provide a status report detailing (1) whether Correa Reyes had been transferred to ERO Phoenix, (2) whether he had been removed to Mexico through the Nogales border, and (3) if he had not been removed, why, and whether any third countries had been identified for his removal and the concrete steps taken to obtain travel documents from those countries.  Jan. 27, 2026, Order 2, ECF No. 8.

On February 27, Respondents filed a Status Report, ECF No. 11, informing the Court that Correa Reyes "was not transferred to ERO Phoenix due to a medical issue" and "[h]e remains detained in El Paso, because Mexico declined to accept him due to his illness." *Id.*  They also inform the Court that "[n]o other third country has been identified." Decl. Cecilia Yague ¶ 12, ECF No. 11-1.  They state that "ICE believes that there is a significant likelihood of removal in the reasonably foreseeable future to a third country." *Id.* ¶ 14.  But they provide no factual basis for this belief.  *See id.*

## II.     ANALYSIS

Correa Reyes seeks a writ of habeas corpus for his immediate release from custody, arguing that his continued detention violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.  Pet. ¶¶ 20–26.

This Court has previously held that a § 1231(a) detainee subject to re-detention after their release pursuant to an OSUP is not limited to a *Zadvydas* claim.  *See Nguyen v. Bondi*, No. 3:25-cv-323-KC, 2025 WL 3120516, at *4 (W.D. Tex. Nov. 7, 2025) (citing *Trejo v. Warden of ERO El Paso E. Montana*, --- F. Supp. 3d ----, 2025 WL 2992187, at *6–7 (W.D. Tex. Oct. 24, 2025)).  By virtue of the liberty interest obtained through their release, a § 1231(a) re-detainee can also

3

bring a distinct procedural due process claim. *See id*. In *Nguyen*, this Court found a procedural due process violation where a Vietnamese national subject to a final order of removal, who had previously been deemed unremovable to Vietnam and released, was re-detained without an individualized assessment of his flight risk and dangerousness by an Immigration Judge ("IJ"). *See id.* at *5–8. The balance of the *Mathews v. Eldridge* factors weighed in favor of Nguyen because he had a strong liberty interest, the risk of erroneous deprivation was high and easily ameliorated through a bond hearing, there was little evidence that he was a flight risk or danger to the community, and the Government failed to demonstrate that his removal was significantly likely in the reasonably foreseeable future. *See id.* Although the Government had submitted Nguyen's travel document request to Vietnam, it failed to provide an expected timeline for approval, did not attach copies of the submitted request, and the statistics it provided regarding successful removals of Vietnamese nationals did not identify whether any of these individuals, like Nguyen, were pre-1995 refugees. *See id.* at *7. Thus, after approximately three and a half months in detention, this Court ordered Respondents to either provide Nguyen with a bond hearing or release him. *See id.* at *1, 4, 8.

Here, Correa Reyes has been detained for over five months and Respondents concede that he cannot be removed to Cuba or Mexico and that they have not identified another third country for removal. *See* Resp; Status Report. In *Nguyen*, this Court found that, "[w]hile it may be that Nguyen's removal to Vietnam is now possible, where it was previously impossible, Respondents have not shown that his removal is significantly likely to occur in the reasonably foreseeable future." *See Nguyen*, 2025 WL 3120516, at *7. In Correa Reyes' case, removal to Cuba and Mexico is impossible. And because Respondents have not identified another country to which

4

Correa Reyes can be removed, they have failed to show that his removal is significantly likely to occur in the reasonably foreseeable future. *Cf. id.*

Thus, at this time, Respondent's interest in effectuating Correa Reyes' removal order is weak. *See id.* at *7–8. And any interest in preventing flight or danger is similarly weak, as Correa Reyes was previously released on an OSUP and there is no evidence in the record that he currently presents a flight risk or has committed any crimes or endangered anyone since his most recent release in 2019. *See id.* at *6. The Government's interest in re-detaining Correa Reyes is thus outweighed by his strong liberty interest from seven years of liberty in the United States, and the fact that the high risk of erroneous deprivation could be easily ameliorated by a bond hearing. *See id.* at *5–6.

While there is no doubt that Correa Reyes is subject to a final order of removal and that Respondents are entitled to remove him from the United States, when they are unable to effectuate that removal and have failed to identify an alternative removal plan, they cannot continue to detain Correa Reyes without providing him with an individualized custody determination.

### III. CONCLUSION

For the foregoing reasons, the Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED IN PART**. The Court **ORDERS** that, **on or before March 10, 2026**, Respondents shall either: (1) provide Correa Reyes with a bond hearing before an IJ, at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Correa Reyes' continued detention; or (2) release Correa Reyes from custody, under reasonable conditions of supervision.

**IT IS FURTHER ORDERED** that, <u>**on or before March 10, 2026**</u>, Respondents shall **FILE** notice informing the Court whether Correa Reyes has been released from custody. If Correa Reyes has not been released from custody, Respondents shall inform the Court whether and when a bond hearing was held in accordance with the preceding paragraph. Respondents shall further inform the Court, in detail, of the reasons for the IJ's decision.

**IT IS FURTHER ORDERED** that if Correa Reyes is released from custody, Respondents shall **RETURN** all of his personal property in their custody to him upon release. Such property includes, but is not limited to, identification documents.

<u>**There will be no extensions of the March 10, 2026, deadlines.**</u>

<u>**Respondents are CAUTIONED that a proceeding in which bond is denied by the IJ for lack of jurisdiction does not satisfy Respondents' obligation to provide a bond hearing in compliance with this Order, and therefore requires release from custody.**</u>

**SO ORDERED**.

**SIGNED** this 3rd day of March, 2026.

_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE